IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TONY ALAN WILLIAMS,

    Plaintiff,

v.                                                        Case No. 19-cv-0468 MV-KBM

GEO GROUP, INC., *et al,*

    Defendants.

**MEMORANDUM OPINION AND ORDER**

    This matter is before the Court on Plaintiff Tony Alan Williams' Amended *Pro Se* Civil Rights Complaint (Doc. 14) (Complaint).  Plaintiff is incarcerated and *pro se*.  He alleges that Lea County Correctional Facility (LCCF) wardens violated his First Amendment right to access courts by providing an inadequate law library.  Having reviewed the matter *sua sponte* under 28 U.S.C. § 1915A, the Court will dismiss the Complaint but grant leave to amend.

**I.**    **Background**

    In 1988, Plaintiff was convicted of an unspecified crime in the State of Hawaii. (Doc. 14 at 15).  He served about 12 years in Hawaii before he was transferred to the Ely Maximum Security Prison ("Ely") in Nevada.  *Id.* at 6.  Plaintiff was held in Ely pursuant to a contract between Hawaii and Nevada, which he contends was invalid.  *Id.*  During that time, he filed several civil rights actions in the Nevada Federal Court.  *Id.* at 6-7.  On April 16, 2014, while at least one of those cases was pending, the State of Hawaii transferred Plaintiff from Ely to LCCF in Hobbs, New Mexico.  *Id.* at 3.  Plaintiff alleges that he could not move his cases forward because the LCCF law library is inadequate.  *Id.* at 2.  Specifically, he alleges that he was unable to research issues by

subject matter, locate controlling precedent, review decisions from New Mexico and other districts, or shepardize cases. *Id.* at 3-4. LCCF's library also purportedly lacks state or federal reporters. *Id.* at 4. Without those books, Plaintiff was unable to research legal precedent cited in a proposed ruling from the Nevada Federal Court. *Id.*

The Complaint details six different claims (Claims A through F) that were allegedly frustrated by LCCF's inadequate law library.[1] (Doc. 14 at 6-16). Claims A, B, and C pertain to Plaintiff's incarceration at Ely. It appears that he raised those claims in the Nevada Federal Court before his transfer to LCCF, but it is not entirely clear. Claim A alleges that there was no valid contract between Hawaii and Nevada to house prisoners and that Plaintiff was therefore wrongfully imprisoned in Ely between 2004 and 2014. *Id.* at 6-7. Claim B challenges the handcuffing practices at Ely between 2004 and 2013. *Id.* at 8. Claim C alleges that Plaintiff contracted methicillin-resistant staphylococcus aureus ("MRSA") at Ely in November 2004 and that Ely medical officials did not dispense antibiotics to treat the issue for two months. *Id.* at 10. At least one of those claims was pending in the Nevada Federal Court when Plaintiff arrived at LCCF, but it is unclear when and how Claims A through C were resolved. *Id.* at 4-5.

Plaintiff also contends that LCCF's inadequate law library frustrated his ability to raise civil rights violations that occurred at LCCF, which he labels as Claim D. (Doc. 14 at 11). Plaintiff alleges that he is unable to seek 42 U.S.C. § 1983 relief in this Court for: (1) respiratory issues stemming from poor ventilation when grinding metal or paint; (2) LCCF's failure to purchase a

---

[1] To clarify, Plaintiff lists Claims A through F as part of the pleading standard for his access-to-court claims, rather than to obtain substantive relief on the underlying violations. *See* Doc. 14 at 5 ("[W]hat follows are claims Plaintiff alleges were impeded or frustrated by the inadequacies of the law library at LCCF. Plaintiff understands that he is required to plead his 'frustrated' claims herein.").

high quality tray-cleaning machine, which results in dirty food trays; and (3) sleep disturbances, including too much bright light and a graveyard shift assignment. *Id.* at 11-13.

Claims E and F finally allege that the inadequate law library frustrated Plaintiff's post-conviction proceedings in Hawaii. When Plaintiff arrived at LCCF in 2014, he was seeking "[Hawaii] criminal court review of appellate issues and was requesting an evidentiary hearing." *Id.* at 13. Claim E pertains to Hawaii's alleged refusal to provide records until 2000, which allegedly caused Plaintiff to miss the one-year federal habeas limitation period. *Id.* at 14. Claim F raises a similar claim but provides more details about the timeline of events between the conclusion of Plaintiff's direct criminal appeal in 1990 or 1991 and the production of records in 2000. *Id.* at 15-16. He alleges that he was "stymied by the lack of any legal cases or information needed to litigate his legal claims" in Hawaii state court. *Id.* at 16. Plaintiff contends that he informed every warden at LCCF that the deficient law library impeded his access to courts but that none of the wardens acted. (Doc. 14 at 16). He also filed a grievance with New Mexico Department of Corrections ("NMDOC") Director Greg Mercantile on March 6, 2016 and mentioned the issues to NMDOC administrator Jerry Rourke during a prison visit. *Id.* at 16-17. No one has improved the law library. *Id.* at 17.

Construed liberally, the Complaint raises claims under the First Amendment, the Fourteenth Amendment, and 42 U.S.C. § 1983. Plaintiff appears to seek over $50 million in damages from the following Defendants: (a) Greg Mercantile and David Jablonski, who both served as Secretary of Corrections; (b) Jerry Rourke, Deputy Director of NMDOC; and (c) all current and former wardens of LCCF since 2014, including Wardens Wrigley, Smith, and Janecka. (Doc. 14 at 18, 20). The Complaint is ready for initial review.

## II.     Standards Governing Initial Review

Section 1915A of Title 28 requires the Court to conduct a *sua sponte* review of all prisoner complaints that seek relief from a government official.  The Court must dismiss any inmate complaint that is frivolous, malicious, or "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915A.  The Court may also dismiss a complaint *sua sponte* under Rule 12(b)(6) if "it is patently obvious that the plaintiff could not prevail on the facts alleged, and allowing [plaintiff] an opportunity to amend [the] complaint would be futile."  *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991) (quotations omitted).  The plaintiff must frame a complaint that contains "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Because Plaintiff is *pro se*, his "pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."  *Hall,* 935 F.2d at 1110.  While *pro se* pleadings are judged by the same legal standards as others, the Court can overlook the "failure to cite proper legal authority, … confusion of various legal theories, …, or … unfamiliarity with pleading requirements."  *Id.*  Moreover, if the initial complaint fails to state a claim, courts should generally grant leave to amend unless amendment would be futile.  *Id.*

### III.     Discussion

Plaintiff's constitutional claim must be analyzed under 42 U.S.C. § 1983, the "remedial vehicle for raising claims based on the violation of [federal] constitutional rights." *Brown v. Buhman*, 822 F.3d 1151, 1161 n.9 (10th Cir. 2016). "A cause of action under section 1983 requires the deprivation of a civil right by a 'person' acting under color of state law." *McLaughlin v. Bd. of Trustees*, 215 F.3d 1168, 1172 (10th Cir. 2000). The plaintiff must allege that each government official, through the official's own individual actions, has personally violated the Constitution. *See Trask v. Franco,* 446 F.3d 1036, 1046 (10th Cir. 1998). There must also be a connection between the official conduct and the constitutional violation. *See Fogarty v. Gallegos,* 523 F.3d 1147, 1162 (10th Cir. 2008); *Trask,* 446 F.3d at 1046.

The right to access courts implicates the First Amendment, the Fifth Amendment, and the Due Process Clause. *See Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990); *Love v. Summit Cty.*, 776 F.2d 908, 912 (10th Cir. 1985) (same). An inmate must receive "a reasonably adequate opportunity to present claim[s] … to the courts." *Lewis v. Casey*, 518 U.S. 343, 350 (1996) (quoting *Bounds v. Smith*, 430 U.S. 817, 825 (1977)). The right focuses on the "conferral of a capability – the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Lewis*, 518 U.S. at 356. *See also Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (a § 1983 plaintiff must demonstrate that he was effectively "shut out of court"). The constitution does not require jails "to supply legal assistance beyond the preparation of initial pleadings," *Carper v. DeLand*, 54 F.3d 613, 617 (10th Cir. 1995), nor does it guarantee that inmates can "*litigate effectively* once in court." *Lewis*, 518 U.S. at 354 (emphasis in original). However, prison officials "may not erect barriers that impede the right of access of incarcerated persons." *Carper*,

54 F.3d at 617.

Claims pertaining to prison law libraries are difficult to establish, as there is no "abstract, freestanding right to a law library or legal assistance," provided that the inmate has some method of filing an opening petition. *Lewis*, 518 U.S. at 354. *See also Penrod v. Zavaras*, 94 F.3d 1399, 1403 (10th Cir. 1996) ("[T]he constitutional obligation to provide inmates access to courts does not require states to give inmates unlimited access to a law library, and inmates do not have the right to select the method by which access will be provided."). Said differently, "prison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Lewis v. Clark*, 577 F. App'x 786, 796 (10th Cir. 2014) (quotations omitted).

Beyond demonstrating a lack of access, a plaintiff must show that the deficient law library "prejudiced him in pursuing litigation." *Treff v. Galetka*, 74 F.3d 191, 194 (10th Cir. 1996). "Conclusory allegations of injury in this respect will not suffice." *Wardell v. Duncan*, 470 F.3d 954 (10th Cir. 2006). *Cf. Lewis,* 518 U.S. at 351 ("[A]n inmate cannot establish relevant actual injury simply by establishing [that the] … legal assistance program is subpar in some theoretical sense."). Plaintiffs must allege specific facts about how the legal research issues prevented them from attacking "their sentences, directly or collaterally" or challenging "the conditions of their confinement." *Lewis*, 518 U.S. at 355. For example, the Tenth Circuit has held that "general allegations that [plaintiff] failed to prevail in his collateral attacks on his conviction and restitution order as a result of [deficient law library] … are too vague and conclusory to state an arguable claim." *Brooks v. Colorado Dep't of Corr.,* 762 F. App'x 551, 558 (10th Cir.), *cert. denied*, 140 S. Ct. 207 (2019). Where a plaintiff alleges that the prison library policies prevented him from

6

presenting a claim, the complaint must explain exactly "how this is so." *Id*.

Applying these standards, the Complaint fails to allege sufficient facts to state an access-to-court claim under § 1983.  It appears that Plaintiff raised Claims A, B, C - which address civil rights violations at Ely - in the Nevada District Court before his transfer to LCCF.  Accordingly, it is unclear how any issues at LCCF could have prevented him from bringing those civil rights challenges in a federal court.  At most, the lack of legal materials at LCCF prevented Plaintiff from adequately responding to a proposed ruling by the Nevada District Court recommending dismissal of his civil rights action.  (Doc. 14 at 4).  However, as noted above, the Constitution does not guarantee the right to litigate effectively once in court, and a prison is not required to "supply legal assistance beyond the preparation of initial pleadings."  *Carper*, 54 F.3d at 617.  Federal law assumes that "[o]nce an inmate gains access to the court through a properly prepared and filed initial pleading, the court will then be in a position to determine whether the claim has any merit." *Carper*, 54 F.3d at 617 (quoting *Bee v. Utah State Prison*, 823 F.2d 397, 399 (10th Cir. 1987)).  Plaintiff therefore has not stated an access to courts claim based on his inability to litigate Claims A, B, and C after arriving at LCCF.

Similarly, Claims E and F cannot form the basis for an access claim.  Plaintiff alleges that the LCCF library and in particular, the lack of reporters and resources relating to AEDPA/28 U.S.C. § 2254, prevented him from filing a post-conviction petition challenging his Hawaii conviction.  To the extent that he suggests he missed his opportunity to seek § 2254 relief, this is controverted by public records.  *Williams v. Wright*, 106 F.3d 411 (9th Cir. 1997) reflects that Plaintiff sought habeas relief from his Hawaii convictions in federal court and the Ninth Circuit.  He raised § 2254 claims for improper shackling at trial, evidentiary errors, prosecutorial misconduct, and ineffective

7

assistance of counsel. *Id.* The Hawaii Federal Court denied those claims on the merits, and the Ninth Circuit affirmed. *Id.* The Complaint does not demonstrate how LCCF prevented Plaintiff from pursuing additional non-frivolous § 2254 claims, given that such claims would be time-barred and successive.

To the extent that the Complaint alleges that LCCF's library prevented Plaintiff from challenging his convictions in Hawaii, the state records also undermine this claim. The Hawaii state court records, which are subject to judicial notice, reflect that Plaintiff filed three post-conviction petitions and appeals after arriving at LCCF on April 16, 2014. *See* Case Nos. SCPW-14-0000924; CAAP-14-0001287; SCWC-14-0001287, available at http://jimspss1.courts.state.hi.us. All filings were ultimately unsuccessful. *Id.* Plaintiff attributes the lack of success in the Hawaii litigation to the lack of legal resources at LCCF. However, as noted above, such allegation is not actionable under federal law, even assuming that it is true. *See Carper*, 54 F.3d at 617; *Toevs v. Milyard*, 563 F. App'x 640, 646 (10th Cir. 2014) (rejecting access claim where prison did not "prevent[] him from preparing initial pleadings in a civil action regarding his confinement").

Plaintiff finally alleges that the inadequate law library impeded his ability to raise various conditions of confinement claims arising at LCCF (together, Claim D). Construed liberally, the Complaint appears to allege that Plaintiff wants to research applicable law under 42 U.S.C. § 1983 and the constitution before filing a civil action based on his living conditions. While this inclination is natural, Plaintiff does not need to cite law to file a civil rights complaint. *Pro se* plaintiffs are only required to state the facts supporting their claim, *i.e.,* the who, what, where, and why of what happened. *See Robbins v. Oklahoma,* 519 F.3d 1242, 1250 (10th Cir. 2008). It is therefore unclear

how the inadequate law library prevented Plaintiff from filing a claim relating to his conditions of confinement, or what materials he needed (such as the § 1983 form) to complete that process. *See McBride v. Deer*, 240 F.3d 1287, 1290 (10th Cir. 2001) (rejecting access claim where plaintiff had "no way of knowing how to file a motion or [post-conviction] appeal" but did not "describe sufficiently the legal materials he was seeking").

For these reasons, and in accordance with the exacting Tenth Circuit standards on this subject, Plaintiff has not stated a cognizable claim for the denial of access to courts. The Court will dismiss the Complaint (Doc. 14) pursuant to 28 U.S.C. § 1915A. The Tenth Circuit counsels that *pro se* plaintiffs should ordinarily be given an opportunity to "remedy defects potentially attributable to their ignorance of federal law." *Reynoldson v. Shillinger,* 907 F.2d 124, 126 (10th Cir. 1990). Accordingly, the Court will permit Plaintiff to amend his complaint within sixty (60) days of entry of this Order. When drafting an amendment, Plaintiff should ensure that each Defendant was personally involved in the alleged constitutional violation. For example, Plaintiff should explain whether the prison wardens dictate the contents of the law library, or whether some other individual (like a prison librarian) is responsible for maintaining research materials. Plaintiff is also advised that to recover from a prison supervisor who was not personally involved in the alleged wrongdoing, the Complaint must allege that the supervisor promulgated a policy or custom that caused the constitutional violation. *See Pahls v. Thomas*, 718 F.3d 1210, 1226 (10th Cir. 2013). Conclusory allegations on that point are typically insufficient to establish supervisory liability. If Plaintiff declines to timely file an amended complaint or files another complaint that fails to state a cognizable claim, the Court may dismiss this action with prejudice and without further notice.

**IT IS ORDERED** that Plaintiff's Amended Civil Rights Complaint (**Doc. 14**) is **DISMISSED without prejudice** for failure to state a cognizable claim under 28 U.S.C. § 1915A; and Plaintiff may file an amended complaint **within sixty (60) days** of entry of this Order.

_____
HONORABLE MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE